IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAROLYN COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-CV-586-WKW |
| | ) | [WO] |
| ELMORE COUNTY BOARD OF | ) | |
| EDUCATION, LARRY TEAL, | ) | |
| KITTY GRAHAM, JOEY HOLLEY, | ) | |
| ROBERT LUSK JR., MARK | ) | |
| NELSON, MARY ANN MCDONALD, | ) | |
| JEFFERY LANGHAM, and | ) | |
| CAROL MCGALLIARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Carolyn Cooper claims that she was discriminated against because of

her race when she was not hired by Defendant Elmore County Board of Education

("School Board") as a supplemental route bus driver.[1] Ms. Cooper claims Defendants'

actions violated the Equal Protection Clause of the Fourteenth Amendment, as

---

[1]  The individual Defendants include the members of the School Board (Larry Teal, Kitty Graham, Joey Holley, Robert Lusk Jr., Mark Nelson, and Mary Ann McDonald), as well as Dr. Jeffery Langham, Superintendent of the Elmore County Public School System, and Ms. Carol McGalliard, former Assistant Superintendent and Director of Transportation.

enforced by 42 U.S.C. § 1983, and 42 U.S.C. §§ 1981 and 1981a (collectively, "§ 1981"), as enforced by § 1983.

Before the court is Defendants' Motion for Summary Judgment (Doc. # 34), which is accompanied by a supporting brief and evidentiary submissions (Docs. # 34 & 35). Plaintiff filed a response in opposition (Doc. # 40), to which Defendants replied (Doc. # 41). After careful consideration of the arguments of counsel, the applicable law and the record as a whole, the court finds that the motion is due to be granted.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the nonmovant. *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation and internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th

Cir. 2008); Fed. R. Civ. P. 56(c). When the nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## IV. BACKGROUND[2]

The facts are largely undisputed. Ms. Cooper, a black female, is employed by the School Board as a regular route bus driver. In addition to her regular route, Ms. Cooper previously had a contract with the School Board as a supplemental route bus driver. The duties for regular routes and supplemental routes were the same: transporting students to and from school. (Pl.'s Dep. 20–21 (Doc. # 34, Ex. A); Defs.' Resp. to Requests to Admit 2 (Doc. # 40, Ex. C).)

On March 25, 2009, all supplemental bus driver contracts were cancelled to save money in the Transportation Department's budget.[3] (McGalliard Dep. 23–25 (Doc. # 34, Ex. B); Pl.'s Dep. 91.) At the time, there were thirteen supplemental route

---

[2] The actual facts may be different than those stated here. *See Lee*, 284 F.3d at 1190.

[3] Originally, Ms. Cooper claimed that the termination of her contract was based on race. However, in her deposition she admitted that she was no longer pursuing this claim. (Pl.'s Dep. 99.)

bus drivers, including Ms. Cooper.  The School Board sought to consolidate the supplemental routes so that it could hire fewer drivers.  The School Board posted the new supplemental route positions as required by law and advertised them for fourteen days.  Thirteen applicants were interviewed for the job; four were black, and nine were white.[4]

## A.   The Interview Process

School Board policy requires that applicants be interviewed by a panel so that no one person makes the hiring decision.  (McGalliard Dep. 38.)  Defendant Dr. Jeffery Langham, Superintendent of the Elmore County Public School System, chose the interview panel, which was comprised of school administrators.  Defendant Carl Thomas, Director of the Elmore County Technical Center, was selected by the panel to chair the interview panel because many of the students to be transported in the supplemental routes were under his supervision.  The other members of the interview panel included Defendants Rashawn Causey, Greg Wilkins, James Carver, and Anderson Graves.[5]

---

[4]  Originally, fourteen applicants applied.  However, one applicant was not interviewed because the applicant did not have an Alabama driver's license, as required by the job posting. (McGalliard Dep. 30; Doc. # 34, Ex. 1 to Ex. D.)

[5]  For reasons that are not clear, Mr. Wilkins did not participate in the actual interviews of applicants.  Because Mr. Graves only participated in the first day of interviews, his scores were excluded from the first day interviewees' total scores.

Defendant Carol McGalliard, Assistant Superintendent and Director of Transportation,[6] drafted a questionnaire for the interview panel to use in the interviews.  She submitted the questionnaire to Dr. Langham for approval.  Ms. McGalliard also gave the questionnaire to the School Board's attorney to "make sure it was fair."  (McGalliard Dep. 43.)  Both Dr. Langham and the School Board's attorney approved the questionnaire.  (Langham Aff. (Doc. # 34, Ex. C).)

The questionnaire had the following ten questions:

1.  If you are already employed as a bus driver with the Elmore County Board of Education, which community do you drive for?

If you are a substitute driver, where do you live and which community (or communities) do you drive in?

2.  Because you are already licensed as a bus driver, what do you see as the most important job responsibilities as a driver?

3.  What experiences do you have as a bus driver?  Include regular routes, field trips and/or special routes[.]  Do you have any experience using a wheelchair lift?

4.  Do you consider yourself as a part of a team?  In other words, do you understand that this position will require you to take specific directions from the Transportation Department regarding route schedules?  In addition to your yes/no answer, explain your philosophy of a team member?

_____

[6] Ms. McGalliard retired from her position with the Elmore County Board of Education on March 1, 2011.

5.  Dream for a moment.  If you could name one thing that could help make transportation better for the students of Elmore County, what would it be?

6.  As a driver, how do you manage (or maintain discipline [of]) the students on your bus?

7.  If the Transportation Department chose to view a portion of your daily bus route while transporting students, what would the department see?

8.  Discuss your work ethics with this group[.]  One example would be attendance.

9.  As a driver, have you ever received a letter of reprimand, a letter of instruction, a letter of concern from the Superintendent and/or Transportation Supervisor?   Have you ever been placed on Administrative Leave by the Superintendent?  Have you ever received complaints from administrators regarding your performance as a bus driver?  If your answer to any of these questions is yes, please explain.

10.  As you know, with any interview process, the committee can never ask all of the right questions[.] What do you need to tell us that you feel it would be important for this committee to know about you[?]  In other words, why are you the best candidate to transport our precious children?

(Special Route Driver Interview Questions (Doc. # 34, Ex. 1 to Ex. D).)   The interview panel was to score each applicant's answer on a scale of 0–10, except for question five, which was not scored.  However, a "yes" answer to question nine could result in negative points, to be subtracted from the applicant's total score.  Mr. Thomas stated that he scored "each answer by the applicants based on presentation and how the applicant handled the questions."  (Thomas Aff. ¶ 6 (Doc. # 34, Ex. D).)

The interview panel did not consider seniority "because all applicants had to be [School] Board employees who were bus drivers and therefore everyone had experience." (Thomas Aff. ¶ 8; *see also* Causey Aff. ¶ 6 (Doc. # 34, Ex. F).)  Instead, the interview panel considered an applicant's honesty, sincerity, and professionalism. (Causey Aff. ¶ 6; *see also* Thomas Aff. ¶ 6.)

The questionnaires, along with each interviewee's scores, were to be turned over to Ms. McGalliard, who would rank the interviewees.  Based on the consolidated routes, it would be determined how many bus drivers were needed, and then the top scorers would be recommended by the Superintendent to the School Board.[7] (McGalliard Dep. 30.)  The School Board would then vote to approve or disapprove the Superintendent's recommendation.

**B.    Ms. Cooper's Interview**

Ms. Cooper was interviewed on July 29, 2009, at the Elmore County Technical Center.  The interview panel asked Ms. Cooper all the questions in the questionnaire. When the interview panel asked Ms. Cooper whether she had received complaints from administrators (Question 9), Ms. Cooper answered, "No."  Mr. Thomas gave Ms. Cooper a score of negative four on question nine "because she was not truthful in her

---

[7]  In order to hire personnel, the Superintendent must make a recommendation to the School Board.  (Pl.'s Dep. 67.)

response to the question."   (Thomas Aff. ¶ 7.)   Mr. Thomas had personally reprimanded Ms. Cooper twice:  once for using a Bluetooth while driving and another time for the manner in which she reprimanded students on her bus.  (Thomas Aff. ¶ 7.) Ms. Causey gave Ms. Cooper a score of negative two on question nine because Ms. Cooper "was untruthful in her response."  (Causey Aff. ¶ 7.)

## C.    <u>The Interview Results</u>

It was determined that six drivers would be needed to run the same routes that the thirteen drivers had been running.  The top six applicants were to be offered positions.  The applicant who ranked number one turned down the job because it interfered with his other business interests.  The applicant who ranked number five was not offered a position, because the applicant was not a regular employee with a regular route.  (Pl.'s Dep. 30.)  Ms. Cooper ranked twelfth of thirteen and was not offered a position.  (Pl.'s Dep. 68.)

Dr. Langham recommended that the School Board hire the six individuals submitted to him by the interview panel.  Of the six applicants who were hired by the School Board, two were black and four were white.  Ms. Cooper remains employed as a regular bus driver and receives all benefits associated with that position.

## V.  DISCUSSION

Ms. Cooper brings two employment discrimination claims against Defendants: an equal protection claim and a § 1981 claim.  Though unclear, it appears that Ms. Cooper is pursuing theories of disparate treatment and disparate impact under each claim.  The individual Defendants assert that they are entitled to qualified immunity on all claims and further argue that Ms. Cooper cannot meet her burden to establish discrimination based on race.[8]  (Defs.' Summ. J. Br. 1–2 (Doc. # 35).)

Part A will address Ms. Cooper's official capacity claims against the individual Defendants.  Part B will set out the principles of law governing employment discrimination claims brought under the Equal Protection Clause and § 1981.  Then, Ms. Cooper's disparate treatment claims will be addressed in Part C, followed by analysis of her disparate impact claims in Part D.

---

[8]  Defendants further argue that the individual Defendants are entitled to summary judgment because Ms. Cooper has not met the Eleventh Circuit's "heightened pleading requirement for § 1983 claims filed against individuals."  (Defs.' Summ. J. Br. 13–14.)  Specifically, Defendants argue that "[t]here is no specification as to what the [Defendants] did that would be consider[ed] racial animus which caused [Ms. Cooper] not to receive the job in question."  (Defs.' Summ. J. Br. 13–14.)  However, in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit held that "[a]fter *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by [Federal Rule of Civil Procedure] 8(a)(2), including civil rights complaints."  *Id.* at 710.  Thus, "[p]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*."  *Id.* at 709.  Additionally, challenges to the sufficiency of the pleadings should be raised in a 12(b)(6) motion to dismiss.

**A.**    <u>**Official Capacity Claims Against the Individual Defendants**</u>

It is unclear from Ms. Cooper's Second Amended Complaint (Doc. # 30) whether her § 1983 claims include official capacity claims against the individual Defendants.  "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  Thus, the individual Defendants are entitled to absolute immunity with regard to any claims for damages against them in their official capacities.  Similarly, the individual Defendants in their official capacities are not "persons" for purposes of § 1983 monetary relief.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

**B.**    <u>**Employment Discrimination Claims Brought Under the Equal Protection Clause and § 1981**</u>

Ms. Cooper's equal protection and § 1981 claims will be analyzed jointly because employment discrimination claims brought under the Equal Protection Clause and § 1981 are "subject to the same standards of proof and employ the same analytical framework."  *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).  The elements required for a § 1983 claim apply because claims brought under the Equal

Protection Clause and § 1981 must be brought pursuant to § 1983. To establish a claim under § 1983 against individual defendants in their individual capacities, a plaintiff must show: (1) a violation of a constitutional right and (2) that the violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

A plaintiff must also prove an additional element when bringing a § 1983 claim against a local government or its branches.[9] A school board can be "liable under section 1983 only for acts for which [the school board] is actually responsible." *Marsh v. Butler Cnty.*, 268 F.3d 1024, 1027 (11th Cir. 2001) (*en banc*). Thus, a plaintiff seeking to establish a school board's liability under § 1983 must "identify a [school board] 'policy' or 'custom' that caused [his or her] injury." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a [school board's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the [school board] as an entity is responsible under § 1983.").

---

[9] "School boards constitute branches of local government and thus may be subject to liability under *Monell*." *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 n.9 (11th Cir. 2000).

It is undisputed that the individual Defendants were acting under color of state law during the hiring process.  However, Ms. Cooper's claims fail because there is no constitutional violation under either a disparate treatment or a disparate impact theory. Because evidence is lacking of a constitutional violation, Ms. Cooper cannot show a basis upon which to establish individual liability against the individual Defendants or municipal liability against the School Board.  As a consequence, the issue of qualified immunity, raised by the individual Defendants, need not be reached.

**C.   Disparate Treatment Theory**

### 1.   *General Principles of Disparate Treatment*

A prima facie case for race discrimination based on disparate treatment, may be established in two ways: (1) by presenting direct evidence of discrimination or (2) by presenting circumstantial evidence using a variation of the four-part test delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bryant*, 575 F.3d at 1296 n.20; *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (noting that a prima facie discrimination case can be established directly or indirectly).  Once a plaintiff establishes a prima facie case, the burden shifts to the employer "to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action."  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the employer

meets its burden, the burden shifts back to the plaintiff to show that the employer's stated reason for the adverse employment action was "pretext" for discrimination. *Id.* The pretext inquiry requires a determination, based upon the totality of the evidence, as to whether the plaintiff "'has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  A plaintiff may meet this burden with the evidence used to establish the prima facie case. *Combs*, 106 F.3d at 1528.

### 2.    *Circumstantial Evidence to Prove Disparate Treatment*

It is undisputed that Ms. Cooper's disparate treatment claim is based on circumstantial evidence, and the record is devoid of any direct evidence of race discrimination.  (Pl.'s Resp. Br. 8 (Doc. # 40) (Ms. Cooper's claim "is based on circumstantial evidence . . . .").)  Thus, Ms. Cooper's claim must be established using a variation of the four-part test delineated in *McDonnell Douglas Corp. v. Green*.

A plaintiff may establish a prima facie case of disparate treatment on the basis of race by showing that (1) she is a member of a protected class; (2) she applied and was qualified for the position; (3) she was not hired, despite her qualifications; and (4) the position remained open after she was rejected or the position was filled by a

14

person outside her protected class.  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999); *see also Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *McDonnell Douglas*, 411 U.S. at 802.  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

It is undisputed that Ms. Cooper can show the first three elements of the prima facie case.  However, the fourth element is disputed.  Defendants argue that Ms. Cooper cannot show element four because two black applicants were chosen for two of the six slots.  (Defs.' Summ. J. Br. 25.)  Ms. Cooper maintains that a prima facie case may be established, notwithstanding that two of the six individuals hired are in her protected class because the four white applicants hired were "less qualified" than she.  (Pl.'s Resp. Br. 10, 11–12.)  However, even assuming *arguendo* that Ms. Cooper can establish a prima facie case, she cannot establish that Defendants' proffered reasons for not hiring her are a pretext for racial discrimination.

Defendants assert that Ms. Cooper was not hired because she scored lower than the six chosen applicants.  (Defs.' Summ. J. Br. 26.)  Ms. Cooper scored twelfth of thirteen.  Ms. Cooper's low score came as a partial result of her perceived dishonesty in the interview when she told the interview panel that she had not received any complaints from administrators.  In fact, she had been reprimanded by the chairman

of the interview panel, Mr. Thomas.  Ms. Cooper does not dispute that she had been reprimanded and does not offer any evidence to the contrary.  Thus, Defendants' reason for Ms. Cooper's non-selection is legitimate and nondiscriminatory and satisfies Defendants' burden of rebutting the prima facie case.

Ms. Cooper claims that Defendants' proffered reason "amounts to a pretextual cover-up for discrimination." (Pl.'s Resp. Br. 14.)  As the basis for this argument, Ms. Cooper asserts that the hiring process favored white applicants and that her seniority was not adequately taken into account.  However, Ms. Cooper has presented no evidence of pretext sufficient for a reasonable finder of fact to conclude that Defendants' proffered legitimate reason was not what actually motivated their conduct.

First, Ms. Cooper repeatedly asserts that Defendants are relying on "a testing mechanism that is not validated or otherwise has an affirmative showing of being void of bias and racial prejudice" and that the testing "results in the selection of white applicants as 'the best qualified candidates' at twice that of African–Americans who are in the pool of applicants." (Pl.'s Resp. Br. 14.)  Neither the questionnaire nor the hiring results indicate that the hiring decisions were motivated by race.  Ms. Cooper has not presented, nor is the court aware of, any law requiring an employer to have an interview questionnaire validated as being devoid of bias and racial prejudice when

the questionnaire is neutral on its face.  Despite having no legal obligation, Ms. McGalliard had the School Board's attorney and Dr. Langham review the questions she drafted to ensure the questions were fair.  Even Ms. Cooper admits that none of the interview questions discriminated against her.  (Pl.'s Dep. 50.)  Furthermore, the undisputed fact is that two black applicants and four white applicants were hired from an applicant pool consisting of four black applicants and nine white applicants.  By this hiring process, black applicants were hired at a slightly higher percentage (50%) than that of white applicants (44.4%).

Second, Ms. Cooper asserts that despite her years of experience, she was not hired.  (Pl.'s Resp. Br. 15–16.)  In support of this argument, Ms. Cooper asserts that she had been "driving that supplemental route for eight years," and she "had experience with that supplemental route [as opposed to] someone . . . [who had] never drove a supplemental route."  (Pl.'s Dep. 41.)

Ms. Cooper's second argument also fails to show pretext.  All applicants were required to have bus driving experience.  It is undisputed that driving the supplemental routes required the same skills needed as driving the regular routes.  Defendants selected a way to differentiate among thirteen applicants, all with experience, to fill a limited number of positions.  Instead of seniority, Defendants chose to value honesty, professionalism, and sincerity during the interviews.  (Causey Aff. ¶ 6; *see*

*also* Thomas Aff. ¶¶ 6–7.)  Pretext cannot be established "merely by questioning the wisdom of the employer's reason." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798–99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second guess the business decisions of an employer").  While Ms. Cooper may disagree with Defendants' decision to not value seniority, these facts do not show pretext.

Based on the totality of the evidence, none of Ms. Cooper's arguments casts doubt on Defendants' proffered reason for not hiring her.  The questions were relevant to the position.  Applicants were interviewed by a panel as required by School Board policy.  All applicants were asked the same questions.  There is no evidence presented that any applicant, other than Ms. Cooper, was not candid in his or her interview.  Finally, both black and white applicants were hired.

There is no direct evidence of discriminatory intent, and circumstantially, the evidence is insufficient to raise a genuine issue of material fact that Ms. Cooper suffered discrimination because of her race.  It is, therefore, unnecessary to inquire into the School Board's customs or policies pertaining to employment practices,[10] *see*

---

[10]  Ms. Cooper also argues that a cat's paw theory of liability should apply because the School Board "without any questions, independent investigation or discussion regarding [the interview process] . . . voted to approve the Superintendent's [racially biased] recommendation." (Pl.'s Resp. Br. 13.)  The cat's paw theory allows a plaintiff to establish causation by showing "that the decisionmaker followed the biased recommendation [of a non-decisionmaker] without independently investigating the [recommendation]." *Stimpson v. City of Tuscaloosa*, 186 F.3d

*Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) ("Analysis of a state entity's custom or policy is unnecessary . . . when no constitutional violation has occurred."), or further into the individual Defendants' defenses of qualified immunity. Accordingly, summary judgment for Defendants is due to be entered on the equal protection and § 1981 disparate treatment claims alleging racial discrimination.

## D.   **Disparate Impact Theory**

A "disparate impact theory prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." *Joe's Stone Crab*, 220 F.3d at 1274. Typically, disparate impact claims are brought under Title VII, which contains a provision that expressly allows disparate impact claims. *See* 42 U.S.C. § 2000e-2(k)(1)(A). Unlike Title VII, disparate impact claims brought under §§ 1981 and 1983 require a showing of purposeful discrimination.[11] *Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection

---

1328, 1332 (11th Cir. 1999). "[T]he recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Id.* Because Ms. Cooper cannot show that any of the individual Defendants discriminated against her during the hiring process on the basis of race, this theory also fails.

[11]  To establish a prima facie case for a Title VII disparate impact claim, a plaintiff must show "(1) a specific, facially-neutral employment practice; (2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those qualified to benefit from the practice; and (3) a causal nexus between the practice identified and the statistical disparity." *Price v. M&H Valve Co.*, 177 F. App'x 1, 10 (11th Cir. 2006); *accord Joe's Stone Crab*, 220 F.3d at 1274.

Clause, can be violated only by purposeful discrimination.").  Because liability under these statutes are "founded on purposeful discrimination, a showing of disparate impact through a neutral practice *alone* is insufficient to prove" a violation.  *Price,* 177 F. App'x at 14–15 (emphasis added) (discussing disparate impact in the context of § 1981 claims); *see also Wallace v. City of New Orleans*, 654 F.2d 1042, 1048 (11th Cir. 1981) ("[T]he Title VII standard of disparate impact will not satisfy the necessity under Section 1983 of proving an intent or purpose to discriminate for impermissible reasons.")*; Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 207–08 (2008) (The Fourteenth Amendment's Equal Protection Clause "does not regard neutral laws as invidious ones, *even when their burdens purportedly fall disproportionately on a protected class*.") (Scalia, J., concurring); *Washington v. Davis*, 426 U.S. 229, 241–42 (1976) ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.).

As discussed *supra*, Ms. Cooper has not presented any evidence of purposeful discrimination by Defendants.  Furthermore, Ms. Cooper's hiring data does not raise any inference of discrimination based on race.  Thus, Defendants are entitled to summary judgment on these claims.

## VI.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 34) is GRANTED.  It is further ORDERED that Defendants' motions to strike (Docs. # 52, 53 & 54) and Plaintiff's Motion to Continue (Doc. # 56) are DENIED as moot.  A separate judgment will be issued.

DONE this 26th day of January, 2012.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE